USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/17/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JAMES FORTUNE


                                        Plaintiff,                    **REPORT & RECOMMENDATION**

                    -against-                                         **16-CV-09022 (RA) (KHP)**


FLAVORPILL PRODUCTIONS LLC


                                        Defendant.

-------------------------------------------------------------X
**To: The Honorable Ronnie Abrams, United States District Judge**
**From: Katharine H. Parker, United States Magistrate Judge**

  Plaintiff James Fortune commenced this action against Defendant Flavorpill Productions LLC for copyright infringement pursuant to 17 U.S.C. §§ 106, 501.  The Complaint requests an award of either (i) Plaintiff's actual damages and Defendant's profits, gains or advantages attributable to the infringement or (ii) statutory damages of up to $150,000; costs, expenses, and attorneys' fees; and pre-judgment interest.  Upon Plaintiff's application and in light of Defendant's failure to appear in or otherwise defend against this action, on July 25, 2017, the Court granted Plaintiff's motion for a default judgment.  The matter was then referred to the undersigned for an inquest on damages.

  For the reasons stated below, I recommend that the Court enter judgment for Plaintiff in the amount of $2,250 in statutory damages for Defendant's copyright infringement.  I further recommend that the Court award $2,000 in attorneys' fees and $585 in costs.

**BACKGROUND**

It is well-settled that in light of Defendant's default, Plaintiff's allegations, with the exception of those related to damages, are accepted as true. *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)). Accordingly, the following facts are established as a result of Defendant's default:

- Plaintiff is a professional photographer who licenses his photographs to online, print, and television outlets for a fee.

- Defendant is a New York limited liability company that owns and operates a website at the URL: www.Flavorwire.com.

- In or about 1975, Plaintiff photographed the well-known musicians Brian Wilson of the Beach Boys and Keith Moon of The Who sitting together at a table apparently having a conversation over drinks.  Plaintiff registered the photograph with the U.S. Copyright Office, which assigned the Copyright Registration Number VAu 000-477-427.

- Sometime in 2016, Defendant ran an article on its website discussing, in part, Brian Wilson, and included a copy of Plaintiff's photograph.

- Defendant did not license the photograph from Plaintiff for use in its article or posting on its website.  Nor did it have Plaintiff's permission or consent to publish the photograph on its website.

This Court held a conference on August 28, 2017 to discuss a briefing schedule and hearing date for the damages inquest.  Defendant did not appear for that conference.  This Court then set a briefing schedule and scheduled a damages hearing for October 27, 2017. Defendant did not make any written submissions or appear at the hearing.

**DISCUSSION**

### I.   *Conduct of Hearing and Proof of Damages*

Under Rule 55 of the Federal Rules of Civil Procedure, a court "may conduct hearings . . . to determine the amount of damages."  Fed. R. Civ. P. 55(b)(2).  The Second Circuit has held that a court is not required to hold a hearing where it has "ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted).  In lieu of a hearing, courts may rely on detailed affidavits or documentary evidence to evaluate the proposed sum.  *Id.*  "Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is necessary and proper to hold an inquest on damages." *Tamarin v. Adam Caterers, Inc*., 13 F.3d 51, 54 (2d Cir. 1993) (internal quotation marks omitted).  Plaintiffs bear the burden of establishing their entitlement to recovery and thus must substantiate their claims with evidence to prove the extent of their damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Here, a damages inquest hearing was held and Plaintiff filed papers supporting his request for damages, including a memorandum of law, Plaintiff's affidavit, and an affidavit from counsel attaching documentation of fees and costs incurred in this action.  Plaintiff states in his affidavit that he licenses his photographs, and after a full search of his records he found no evidence of a license for the photograph at issue in this case.  This substantiates the allegation in the Complaint that Defendant did not have a license to use the photograph.  However, the affidavit also makes clear that no one ever sought to license the photo at issue, meaning that there is no other transaction reflecting a license fee paid for the photo.  Rather, Plaintiff

substantiates his damages by pointing to the fact that a print of the photo was available for purchase in the amount of $3,500 on his professional website.[1]

Plaintiff's counsel's affidavit indicates that counsel spent 14.5 hours of time in total on this matter, for a total cost of $4,450 in fees. This time included consulting with Plaintiff, reviewing copyrighted materials, preparation of the complaint and exhibits, default motion, and damages inquest submissions, as well as preparation and attendance at court conferences. Part of the time was spent by lead counsel, who charges $350 per hour, and is the named partner and founder of his firm. Part of the time was spent by associates, whose billing rates are $300 per hour. One associate has five years of experience and the other has ten years of experience. Counsel's affidavit also attaches bills from the process server reflecting $185 in costs. As noted above, Defendant neither appeared at the hearing nor submitted any written opposition to Plaintiff's request for damages.

## II. *Copyright Infringement and Damages*

To establish a violation of the Copyright Act, a plaintiff must demonstrate ownership of a valid copyright and copying of original elements of the copyrighted work. *See Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010). Both requirements are satisfied here. The well-pleaded allegations of Plaintiff's Complaint demonstrate that Plaintiff holds a valid copyright in the photograph, and that Defendant infringed Plaintiff's copyright by producing and displaying an unauthorized copy of the photograph on its website. (Doc. No. 1 ("Compl.") ¶¶ 9-11 & Exs. A-B.)

---

[1] The Court notes that Plaintiff's affidavit, submitted at this Court's request after the hearing on damages, contradicts his counsel's assertion in the previously filed brief that the photograph was licensed in the past for around $5,000. (*See* Docket No. 28 at 3.)

Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, . . . or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Plaintiff has elected to recover statutory damages in lieu of actual damages for Defendant's infringement. Under Section 504(c) of the Copyright Act, Plaintiff can recover between $750 and $30,000 per work infringed, "as the court considers just." 17 U.S.C. § 504 (c)(1).

To determine the amount of statutory damages for copyright infringement, "courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 144 (2d Cir. 2010).

A court can increase the award of statutory damages to up to $150,000 if the infringement was willful. 17 U.S.C. § 504(c)(2). An infringement is willful if "the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility." *Hamil Am., Inc. v. GFI,* 193 F.3d 92, 97 (2d Cir. 1999) (internal quotation marks omitted). Courts frequently infer willfulness where a defendant defaults. *See, e.g., Nature's Enterprises, Inc. v. Pearson*, No. 08-cv-8549 (JGK), 2010 WL 447377, at *7 (S.D.N.Y. Feb. 9, 2010); *Burberry Ltd. v. Euro Moda, Inc.,* No. 08-cv-5781 (CM) (AJP), 2009 WL 4432678, at *3 (S.D.N.Y. Dec. 4, 2009). Where a defendant has acted willfully, "a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further

wrongdoing by the defendants and others." *Malletier v. Carducci Leather Fashions, Inc.,* 648 F.Supp.2d 501, 504 (S.D.N.Y. 2009).

Importantly, not all willful conduct constitutes the kind of "truly egregious conduct" that justifies maximum damages. *EMI Apr. Music Inc. v. 4MM Games, LLC*, No. 12-cv-2080 (DLC) (JLC), 2014 WL 325933, at *5 (S.D.N.Y. Jan. 13, 2014), *adopted by*, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014). Statutory damages need not equal harm actually incurred by a plaintiff, but they should "bear some relation to actual damages suffered." *Coach, Inc. v. O'Brien*, No. 10-cv-6071 (JPO) (JLC), 2012 WL 1255276, at *2 (S.D.N.Y. Apr. 13, 2012). Courts in this Circuit regularly use some multiple of a work's licensing fee when calculating statutory damage. *Broad. Music, Inc. v. Prana Hosp., Inc*., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("Second Circuit case law . . . reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid").

In this case, Plaintiff seeks $25,000 in statutory damages. The brief submitted by Plaintiff's attorney states that this is equivalent to five times the licensing fee for the photograph. However, as noted above, this is inconsistent with the affidavit submitted by Plaintiff stating that the photo was never licensed and was available for sale for $3,500. Plaintiff provides no backup for the $3,500 figure or documentary evidence showing license fees paid for similar photographs used in similar ways. Thus, there is inadequate proof as to the licensing fee that could have been obtained by Plaintiff had anyone sought to license the photo. Further, given that the photo has been in existence since 1975 and apparently no one has had an interest in licensing or purchasing it, the price of $3,500 does not appear to correlate with

the market value of the photograph.  Rather, the photograph appears to have little to no market value.

Additionally, although the Court may infer willfulness based on the default, there is no other evidence demonstrating Defendant's state of mind.  Nor is there any evidence concerning expenses saved or profits earned by Defendant from the article and use of the picture in it.  The subjects in the photo are not the sole focus of the article, and no visible advertisements appear in the portion of the website provided to the Court by Plaintiff.  Nor is there any indicia of revenue obtained by Defendant in connection with the use of the photo.  There is no information as to whether Defendant has ever infringed on other copyrighted material.  Nor is there any information as to whether Defendant realized the photograph in question was subject to a copyright.  The Court also notes that Plaintiff's counsel does not appear to have notified Defendant in advance of filing this action that Defendant was infringing on Plaintiff's copyright in order to resolve the matter outside of litigation.

Given the scant proof of damage to Plaintiff in the form of a lost licensing fee and Plaintiff's bare bones submission supporting damages, this Court recommends that $2,250 in statutory damages be awarded.  This amount is three times higher than the minimum statutory damages available (*i.e.,* $750) and takes into account the assumed willfulness of Defendant based on its default.  This Court also notes that in other cases involving celebrity photos licensed for publication on websites, the licensing fees ranged from $1,000 to $3,750 per photograph.  *See, e.g.*, *BWP Media USA, Inc. v. Gossip Cop Media, Inc*., 196 F.Supp.3d 395 (S.D.N.Y. 2016) (in copyright infringement matter court awarded statutory damages equal to three times the license fee for two of the infringed photographs and five times the license fee

for the third infringed photograph for a total of $15,000); *Erickson Prods., Inc. v. Only Websites, Inc.*, No. 12-cv-1693 (PGG) (KNF), 2016 WL 1337277, at *2 (S.D.N.Y. Mar. 31, 2016) (in case where defendant used three copyrighted photographs on a website, court awarded statutory damages equal to three times the license fee ($3,750 per photograph) after damages inquest); *Nat'l Photo Grp., LLC v. Bigstar Entm't, Inc.*, No. 13-cv-5467 (VSB) (JLC), 2014 WL 1396543, at *4 (S.D.N.Y. Apr. 11, 2014), *adopted by*, 2014 WL 5051275 (S.D.N.Y. Oct. 8, 2014) (awarding three times the licensing fee in statutory damages in copyright infringement case where defendant copied a celebrity photograph owned by plaintiff and reposted it on its own website without paying the $3,000 license fee).  Given that the celebrity photo in question was never licensed by anyone, its licensing value is most likely lower than the low range of fees charged for such photos.  For this reason as well, this Court does not assign more than a $750 value to the potential licensing fee that could be obtained for this photo.

### III.    *Attorneys' Fees and Costs*

The Court may award fees pursuant to Section 505 of the Copyright Act.  17 U.S.C. § 505.  An award of fees is not automatic but "lies within the sole and rather broad discretion of the Court."  *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).  "In determining whether the fee should be awarded, there is no precise rule or standard, but courts look to a non-exhaustive list of factors including frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Mahan v. Roc Nation, LLC*, No. 14-cv-5075 (LGS), 2015 WL 4388885, at *1 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F. App'x 329 (2d Cir. 2016) (internal quotation marks omitted).

In evaluating these factors here, this Court finds that modest attorneys' fees should be awarded because the case was not frivolous insofar as Plaintiff, whose livelihood is photography, has established that Defendant published his copyrighted work without permission and without paying a license fee.  Photographers must be able to enforce their copyrights to stay in business, but it may not be cost effective for a photographer to enforce those rights when attorneys' fees exceed the fees that can be generated from the photo.  And, no lawyer would take on representation without the ability recover reasonable compensation for his work.  Furthermore, defendants will not respect photographers' rights if they are permitted to infringe without facing the prospect of suit and payment of attorneys' fees.

The party seeking attorneys' fees must submit records that enable the Court to determine whether the fee sought is reasonable.  *See Hensley v. Eckerhart,* 461 U.S. 424, 433-34, (1983).  The prevailing party should submit, for each attorney, contemporaneous billing records documenting the date, the hours expended, and the nature of the work done.  *See id.*; *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). Here, although Plaintiff's counsel provided time records in support of its attorneys' fees, the Court believes the time reflected is excessive given the work performed in this case.  For example, there is no reason lead counsel and an associate had to spend six hours together to identify the infringement and prepare the bare bones pro forma Complaint in this matter. Plaintiff's counsel routinely represents photographers in this district and uses template documents to file complaints.  *See Cruz v. Am. Broad. Companies, Inc*., No. 17-cv-8794 (LAK), 2017 WL 5665657, at *2 n.11 (S.D.N.Y. Nov. 17, 2017) (noting that Plaintiff's counsel had filed 452 cases in this Court in the last 21 months).  The Court finds that these tasks should have

taken no more than three hours.  Lead counsel, whose rate is $350 per hour, purportedly spent two hours on this case before filing the Complaint.  However, this Court finds that none of the work in this case required lead counsel's time or attention and that two of the three unnecessary pre-complaint filing hours were lead counsel's time.  Furthermore, this Court notes that Plaintiff's counsel could have contacted Defendant prior to filing suit to request a licensing fee for its use of the photograph and potentially spent even less than three hours to obtain faster relief for the infringement.  It is unclear whether that would have obviated the need for a lawsuit and the incurring of fees, but it generally is prudent for a lawyer to attempt to resolve a dispute prior to filing suit to determine whether a resolution with minimal attorneys' fees and costs can be achieved for the client.  This Court also believes that other associate time, such as a half hour for drafting an affidavit of service was excessive.  This task should have taken no more than ten minutes.  Accordingly, this Court finds that compensation for only ten hours associate time is warranted in this case.

The next issue is the appropriate rate for the associates' time in this matter.  When seeking an attorneys' fee award from the district court, "the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984).  Plaintiff's counsel has not complied with his obligation to submit information supporting his associates' hourly rate of $300.  Based on the Court's review of cases in this district and in the Eastern District of New York, it appears that courts have approved associate rates of $250 and $300 per hour.  *See Dweck v. Amadi*, No. 10-cv-2577 (RMB) (HBP), 2012 WL

3020029, at *4 (S.D.N.Y. July 6, 2012), *adopted by,* 2012 WL 3024185 (S.D.N.Y. July 24, 2012)

(approving $250 rate for intellectual property attorney where no background information

provided); *Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc.,* No. 05-

cv-3243 (NGG) (RML), 2008 WL 2510601, at *5 (E.D.N.Y. June 20, 2008) ("[R]ecent case law in

this circuit has not approved rates over $300 per hour for associates.").  A review of the filings

make it clear that minimal work and brain power went into this matter.  Additionally, counsel

was incredibly sloppy, as evidenced by the inconsistent statements about licensing fees

obtained for the photograph in this matter.  (*See supra* note 1.)  Accordingly, this Court

recommends an hourly rate of only $200 per hour for associates for a total attorneys' fee award

of $2,000.

       Finally, the Court addresses Plaintiff's request for costs.  "[A]lthough not required to do

so, courts routinely award costs to the prevailing party in copyright cases."  *London-Sire Records

v. Armstrong,* No. 3:05-cv-1771 (JBA), 2006 WL 2349615, at *3 (D.Conn. July 28, 2006) (internal

quotations omitted); *see also LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998)

(explaining that "reasonable out-of-pocket expenses incurred by attorneys and ordinarily

charged to their clients" are recoverable in connection with attorneys' fees awards) (internal

quotation marks and citations omitted).  These costs include filing fees, postage, messenger

expenses, and other documented expenditures.  *See Peer Int'l Corp. v. Max Music & Entm't,

Inc*., No. 03-cv-0996 (KMW) (DF), 2004 WL 1542253, at *6 (S.D.N.Y. July 9, 2004).

       Plaintiff has requested reimbursement for the $400 filing fee charged by this Court and

$185 for documented service of process expenses.  Thus, this Court recommends an award of

$585 in costs.  Plaintiff did not seek other relief in his papers submitted in connection with the

damages inquest.  Thus, no other relief is warranted.

## CONCLUSION

For the reasons stated above, this Court recommends that the Court enter judgment for

Plaintiff against Defendant in the amount of $2,250 in statutory damages for Defendant's

copyright infringement.  This Court further recommends that the Court award $2,000 in

attorneys' fees and $585 in costs.

SO ORDERED.

Dated: January 17, 2018
        New York, New York

KATHARINE H. PARKER
United States Magistrate Judge

## NOTICE

**The Defendant shall have seventeen days from the service of this Report and
Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of
the Federal Rules of Civil Procedure (*i.e.* by February 6, 2018).  *See also* Fed. R. Civ. P. 6(a), (d)
(adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail),
(D) (leaving with the clerk), or (F) (other means consented to by the parties)).  Plaintiff shall
have fourteen days from the service of this Report and Recommendation to file written
objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil
Procedure (*i.e.* by February 1, 2018).**

**If the Plaintiff files written objections to this Report and Recommendation, the
Defendant may respond to Plaintiff's objections within seventeen days after being served
with a copy.  Fed. R. Civ. P. 72(b)(2).  Alternatively, if Defendant file written objections, the
Plaintiff may respond to such objections within fourteen days after being served with a copy.
Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d).  Such objections shall be filed with the
Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie
Abrams at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to
any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests
for an extension of time for filing objections must be addressed to Judge Abrams.  The failure
to file these timely objections will result in a waiver of those objections for purposes of**

appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).